**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

CHAMBERS OF
**SUSAN D. WIGENTON**
UNITED STATES DISTRICT JUDGE

MARTIN LUTHER KING COURTHOUSE
50 WALNUT ST.
NEWARK, NJ 07101
973-645-5903

June 27, 2024

William Strazza, Esq.
Law Office of William Strazza LLC
1 Mill Ridge Lane, Suite 106
Chester, NJ 07930
*Counsel for Defendant Jason Kronick*

Rachelle M. Navarro, AUSA
Office of the United States Attorney
80 Broad Street
Newark, NJ 07102
*Counsel for the United States of America*

**SUPPLEMENTAL LETTER OPINION FILED WITH THE CLERK OF THE COURT**

     Re:    ***United States v. Jason Kronick***
             **Criminal Action No. 21-660 (SDW)**

Counsel:

     Before this Court is the renewed motion to be relieved as counsel of record by William Strazza, Esq. ("Mr. Strazza"), appointed counsel for Defendant Jason Kronick ("Defendant"). (*See* D.E. 94.) This Court having considered the parties' submissions and arguments on the record, and for the reasons discussed below and on the record on June 17, 2024 (the "June 17 Hearing")[1], grants Mr. Strazza's renewed motion to be relieved as counsel and hereby finds that Defendant has waived by conduct—or, in the alternative, has forfeited—his right to counsel.

**DISCUSSION**

A.

     This Court writes only for the parties and, accordingly, limits its discussion of the factual and procedural background to only the facts pertinent to the instant decision. In short, this case arises out of Defendant's alleged scheme to avoid paying millions of dollars in personal and employment taxes owed for tax years 2008 through 2010. (*See generally* D.E. 1 (the "Indictment").) The Indictment asserts that, during and after those tax years, Defendant engaged in a yearslong scheme to evade paying what he owed to the Internal Revenue Service ("IRS").

---

[1] This Court expressly incorporates by reference its discussion of the instant motion from the June 17 Hearing.

(*Id.*; *see also* D.E. 97 at 6 n.4.)  The Government contends that the IRS' civil division spent six years attempting to recoup the money, but instead of paying it, Defendant persistently avoided and misled IRS agents.  (D.E. 1; D.E. 97 at 6 n.4.)  When it became clear that Defendant was engaging in "bad faith delays," the Government continues, the IRS referred the case for a criminal investigation.  (D.E. 97 at 6 n.4.)

Defendant tells a different story; he insists, among other defenses, that the Government sat on its hands and failed to timely investigate and prosecute the matter.  (D.E. 94-3 at 2–4.)

No matter the reason for the delays, this case undoubtedly addresses matters that occurred well over a decade ago, and the evidence and witnesses relevant to the material events at issue have also aged.  That context, along with the history described below, are pertinent to this Court's decision.

### Background and Procedural History

On August 25, 2021, a grand jury sitting in Newark, New Jersey, returned an indictment against Defendant, charging him with personal income tax evasion for tax year 2008 (Count One), personal income tax evasion for tax year 2009 (Count Two), personal income tax evasion for tax year 2010 (Count Three), and employment tax evasion for tax year 2010 (Count Four).  (*See generally* D.E. 1.)  Defendant was arrested the next day, and the Office of the Federal Public Defender was appointed to represent him.[2]  (D.E. 2.)  That same day, Defendant was released on a $1 million unsecured bond, and among other bail conditions, his travel was restricted to New Jersey unless approved by Pretrial Services.  (D.E. 3, 6, 7, 13, 15, 17.)

The case proceeded in relatively normal fashion, save for delays related to the COVID-19 pandemic, until July 17, 2023, at which point Defendant failed to appear for a hearing before this Court in violation of his bail conditions.  (D.E. 48, 58.)  This Court reluctantly accepted that Defendant's failure to appear resulted from confusion; however, it expressly reiterated on the record that Defendant was required to be present at all future proceedings.[3]  (D.E. 58 at 33.)  At this same hearing, a trial date was set for November 7, 2023.  (*Id.* at 32; *see also* D.E. 48.)

On September 21, 2023, this Court signed a revised scheduling order setting a date for oral argument on any motions *in limine* for February 7, 2024 (the "February 7 Hearing"), and for trial on February 13, 2024.  (D.E. 51.)  Since then, this Court has observed firsthand repeated disruptive and dilatory conduct by Defendant.

### *The February 7 Hearing*

On February 2, 2024—the Friday before the February 7 Hearing on the motions *in limine* and 11 days before trial—this Court received email correspondence from the Office of the Federal Public Defender, indicating that Defendant wanted new counsel.  (D.E. 69 at 5–6.)  The parties, including Defendant, were instructed to appear at the February 7 Hearing.

---

[2] K. Anthony Thomas, now the Federal Public Defender for the District of New Jersey, was first appointed to represent Defendant.  (D.E. 5.)  Adalgiza A. Núñez, an Assistant Federal Public Defender, was substituted in as Defendant's counsel on September 15, 2022.  (D.E. 29.)

[3] Specifically, this Court noted that Defendant's "nonappearance w[ould] not be tolerated" and his failure to appear "would be a basis for the issuance of a warrant for his arrest."  (D.E. 58 at 33.)

Defendant arrived more than an hour late for the February 7 Hearing.[4]   (*Id.* at 3–9.) Notwithstanding, this Court and all counsel waited.  (*Id.*)  Once the February 7 Hearing began, this Court conducted a hearing outside the presence of the Government to investigate the issues between Defendant and Adalgiza A. Núñez ("Ms. Núñez"), his then-counsel from the Office of the Federal Public Defender.  (*Id.* at 11–28.)  During this colloquy, Ms. Núñez represented that there had been a complete breakdown in communication, that there had been a fundamental disagreement over trial and defense strategy, and that Defendant threatened unspecified legal action against her.  (*Id.* at 27–28.)  In turn, Defendant stated that he did not want Ms. Núñez as his counsel and assured this Court that he would retain private counsel within three weeks.[5]  (*Id.* at 28–29, 33–35, 37.)

Although this Court was troubled by Defendant's "very last minute" request[6] to retain counsel, it set a deadline of February 28, 2024, for him to do so.  (*Id.* at 33–35.)  If Defendant failed to retain private counsel by then, this Court instructed, he could proceed *pro se* or with appointed counsel, if he qualified.  (*Id.* at 33–38.)

By February 28, 2024, Defendant had yet to retain counsel or complete the financial affidavits necessary for this Court to appoint counsel.  On or about March 8, 2024, Defendant completed the financial affidavits, which indicated that he qualified for appointed counsel, and three days later, this Court appointed Mr. Strazza as Defendant's standby counsel. (D.E. 75.)  The next hearing was set to occur on March 20, 2024.

*The March Hearings*

On March 20, 2024, counsel came prepared to argue motions *in limine* before this Court. Once again, however, Defendant missed his flight and failed to timely appear for the hearing. (D.E. 81 at 3–9.)  This Court, in accordance with its previous warnings, issued a warrant for Defendant's arrest.  (*Id.* at 9; *see also* D.E. 76–77.)  In doing so, this Court noted Defendant's repeated delays, issues with pre-trial services, and utter disregard for his bail conditions.  (D.E. 81 at 3–9.)  Thereafter, this Court set a hearing for March 26, 2024 (the "March 26 Hearing").

At the March 26 Hearing, this Court granted Defendant's motion for release from custody; modified the conditions of his release; appointed Mr. Strazza as counsel; confirmed the trial date

---

[4] Defendant represented to this Court that he missed his same-day flight from Florida to New Jersey.  (*Id.* at 11–12.)

[5] Notably, this Court reiterated to Defendant at the February 7 Hearing that he could retain private counsel of his choice at any time.  (*Id.* at 25.)

[6] For several reasons, this Court was concerned by Defendant's request and his appearance in court at the February 7 Hearing.  First, the request was made on the eve of trial, and Defendant gave inconsistent reasons for it.  For instance, Defendant represented to this Court that he had only recently grown unsettled with Ms. Núñez's representation during the two weeks leading up to the February 7 Hearing; however, upon further questioning by this Court, Defendant later admitted that he had met with over a dozen attorneys in private practice months before that, including in August and September 2023.  (*See generally id.*)  Second, Defendant initially did not present good cause for this Court to relieve counsel at such a late date; at first, he merely took issue with Ms. Núñez's trial strategy.  *See United States v. McNeil*, 561 F. App'x 162, 164 (3d Cir. 2014) ("Disagreement over legal strategy does not constitute good cause." (citations omitted)).  Third, this Court was concerned with Defendant's numerous outbursts in open court—when he routinely and inappropriately interrupted the Government, his counsel, and this Court.  (*See generally* D.E. 69.)

3

of June 18, 2024[7]; and set a hearing on the motions *in limine* for May 16, 2024 (the "May 16 Hearing"). (*See generally* D.E. 84.)

*The May 16 Hearing*

History seemed to repeat itself at the May 16 Hearing. On the morning of that hearing, Mr. Strazza filed with this Court a letter indicating that Defendant was planning to "ask either (or both) that [his appointed counsel] be relieved . . . and that [Defendant] be assigned new counsel or permitted to represent himself." (D.E. 90.) This Court inquired into the attorney-client conflict during the May 16 Hearing. (D.E. 93 at 6–16.) There, Defendant initially explained that he was dissatisfied with Mr. Strazza because there was insufficient communication[8] and because he wanted a tax expert. (D.E. 93 at 8, 11.) Defendant leveled other accusations at Mr. Strazza and stated that he "d[id] not trust him," would "not deal with him," "would not share anything regarding discovery with him," would "not discuss any [trial] strategy with him," and would "have [his] own private counsel" present for trial. (*Id.* at 15–16.)

Troubled by Defendant's second last-minute request for new counsel and having found that good cause to appoint new counsel did not exist at that late stage, this Court inquired into whether Defendant wished to proceed *pro se*. (*Id.* at 33.) Defendant made a series of contradictory and unclear requests in that regard—he expressed a desire to retain counsel; asked this Court to appoint new counsel; and then, numerous times, he requested permission to proceed *pro se*. (*See, e.g.*, *id.* at 11, 15–17 16, 35–38, 55, 61, 62, 71, 117.)

In an abundance of caution, this Court conducted a *Faretta* hearing during which it, among other things, informed Defendant of the risks of proceeding *pro se*; sought to discern whether Defendant's choice to proceed *pro se* was clear and unequivocal; and explained that, if Defendant failed to retain counsel before the trial, he would proceed *pro se*. (*Id.* at 33–61.) Defendant equivocated; he did not evince an unambiguous desire to represent himself. (*Id.*) Therefore, this Court did not permit him to do so, and Mr. Strazza remained as Defendant's counsel. (*Id.* at 61, 80–83.)

Throughout the remainder of the May 16 Hearing, Defendant repeatedly and inappropriately[9] expressed his dissatisfaction with this Court's rulings and with Mr. Strazza. As the May 16 Hearing proceeded, this Court grew increasingly concerned with Defendant's apparent pattern of dilatory tactics, namely, his frequent outbursts that interrupted the proceedings; his apparent unwillingness to assist—and, in some instances, his intentional obstruction of—his own counsel; and his pattern of requesting new counsel on the eve of trial despite his ample opportunity to do so in the months prior. (*See, e.g.*, *id.* at 37, 43–44, 48, 61–62, 76, 80–82, 86–87, 134, 143.) In addition, this Court reiterated to Defendant—as it did during the March Hearings—that he had three options: he could proceed with Mr. Strazza, retain private counsel, or proceed *pro se*. (*Id.* at 17, 25, 43–44, 48, 143.) This Court also informed Defendant that it would not appoint new

---

[7] The trial date was later amended to June 17, 2024, due to a scheduling conflict. (D.E. 86.)

[8] Specifically, Defendant stated that Mr. Strazza did not once call, email, or discuss the case with him. (D.E. 93 at 11.) Mr. Strazza stated that "at the appropriate time, [he] would contest most of those facts." (*Id.* at 12.) And he did. (*See* D.E. 94-1.)

[9] As at previous hearings, Defendant had frequent outbursts and often interrupted counsel and this Court. (*See, e.g.*, *id.* at 13, 34, 65, 67, 82.)

counsel because, as Mr. Strazza admitted, these similar issues were likely to repeat themselves. (*Id.* at 10–11, 62–64, 72, 80–81.)  Still, at the culmination of the May 16 Hearing, Defendant emphatically stated, "Mr. Strazza will not be the attorney [at the trial]."  (*Id.* at 143.)

*The Strazza Certification and the Motion to Be Relieved as Counsel*

Five days after the May 16 Hearing, Mr. Strazza filed a formal motion to be relieved as counsel.  (D.E. 94.)  Therein, Mr. Strazza included a certification containing facts that contradicted much of what Defendant had said on the record at the May 16 Hearing.  (D.E. 94-1.)  More specifically, Mr. Strazza stated that:

- from March 11 through March 20, 2024, he was in regular contact with Defendant;
- after Defendant's arrest on March 20, he was in regular contact with Defendant's father, Arnold Kronick, until March 26, 2024, at which time Defendant was released;
- thereafter, Defendant was confrontational with him, refused to share discovery with him, and told him that he "would not be his lawyer for long";
- in the weeks that followed, he tried calling Defendant many times, but each time the call went directly to voicemail;
- eventually, he heard from Defendant in an email dated April 3, 2024, in which Defendant was generally confrontational, instructed him not to contact witnesses about the case, and stated that they should talk at noon on April 5;
- on April 5, he never heard from Defendant, so he tried calling and emailing in the ensuing days;
- on April 11, he and Defendant set up a call for April 14;
- on April 15 and 16, he and Defendant had more confrontational calls;
- during the April 15 and 16 calls, Mr. Strazza made clear to Defendant that he was "free to retain counsel provided counsel would be ready [to] try the case in June," "that he [wa]s free to represent himself," and that he could always contact Mr. Strazza but that confrontational communications were counterproductive; and
- Mr. Strazza and Defendant did not talk again until May 13 through May 16, during which time they exchanged 19 confrontational emails, which "made it clear it would be impossible for [Mr. Strazza] to ever have any useful or meaningful communication with [Defendant]."

(*See generally id.*)[10]

On May 28, 2024, this Court—in an effort to ensure counsels' preparedness at trial—informed the parties via email that it had reviewed Mr. Strazza's motion to be relieved as counsel and was not inclined to grant it.  This Court formally denied Mr. Strazza's motion on the record at the June 17 Hearing.  (Transcript from the June 17 Hearing ("June 17 Tr.") at 12–13.)  That decision rested largely on this Court's finding that there was no good cause to relieve Mr. Strazza

---

[10] Mr. Strazza also noted that Defendant had "made several threats of filing complaints against [Mr. Strazza] and [his] office throughout the [May 16 Hearing], often interrupting [counsel's] efforts to hear [the Government] and [the Court]."  (*Id.* at 10–11.)

of his representation and that Defendant was engaging in "dilatory tactics" with "an express intent to delay the trial." (*Id.* at 13.)

Almost immediately after this Court denied that motion, new facts developed at the June 17 Hearing, which prompted Mr. Strazza to orally renew his motion to be relieved as counsel. (*Id.* at 48.) Specifically, Defendant, outside of the courtroom but in the presence of at least one Government agent, was involved with Mr. Strazza in a confrontation "which began as verbal and escalated to near physical." (*Id.*) As Mr. Strazza explained on the record, he "had to warn [Defendant] to back away from [him], as [Defendant] came physically within a quarter inch, eye to eye, forehead to forehead, with [him]." (*Id.*)

Thereafter, this Court granted, on the record, Mr. Strazza's renewed motion to be relieved as counsel. (*Id.* at 63–64.) It also found that Defendant, by his conduct, had waived his Sixth Amendment right to counsel. (*Id.* at 64–66.) For the benefit of the parties, this Court elaborates and further supports its findings and conclusions below.

## B.

The Sixth Amendment provides that "in all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI. Although this right "has long been considered 'fundamental,'" *United States v. Goldberg*, 67 F.3d 1092, 1097 (3d Cir. 1995) (collecting cases), it is "not without limit and cannot be the justification for . . . manipulation of the appointment system," *United States v. Gillette*, 738 F.3d 63, 78 (3d Cir. 2013) (quoting *Fischetti v. Johnson*, 384 F.3d 140, 145 (3d Cir. 2004)).

### Motion for a Continuance to Obtain Substitute Counsel[11]

When confronted with a motion for a continuance to retain substitute counsel on the eve of trial, a district court must conduct the two-step inquiry delineated in *United States v. Welty*, 674 F.2d 185 (3d Cir. 1982) "to balance a defendant's Sixth Amendment right to counsel with a district court's legitimate interest in guarding against manipulation and delay." *Goldberg*, 67 F.3d at 1098. That inquiry is essential "[b]ecause the denial of such a motion forces a defendant to choose between representation by an attorney with whom he is dissatisfied and proceeding *pro se*." *Id.*

The first step of the *Welty* inquiry "requires a district court to determine whether good cause exists for granting the requested continuance." *Id.* At the second step, the court must "engage in an on-the-record colloquy to ensure that a defendant who chooses to represent himself is making a knowing, intelligent and voluntary waiver of his Sixth Amendment right to counsel." *Id.*

The Third Circuit "define[s] good cause as a conflict of interest, a complete breakdown of communication, or an irreconcilable conflict with the attorney." *Id.* (citing *Welty*, 674 F.2d at 188). There are, however, additional interests that a court must take into account when considering a last-minute request for substitution of counsel, including "the efficient administration of criminal

---

[11] At the June 17 Hearing, Defendant, once again, made several contradictory requests regarding his representation. (*Id.* at 51–52.) For example, Defendant unequivocally stated, "I do want to go through the *Faretta* hearings and be *pro se*"; however, minutes later, he backtracked, stating "I am not here to represent myself *pro se*" and "I have counsel []ready to [be] retain[ed]." (*Id.* 51–52, 59.) This Court construes Defendant's requests as a motion for a continuance to retain—or be appointed—substitute counsel. As noted above, Mr. Strazza filed his own motion to be relieved as counsel. (D.E. 94.)

justice; the accused's rights, including the opportunity to prepare a defense; and the rights of other defendants awaiting trial who may be prejudiced by a continuance." *Id.* (citing *United States v. Kikumura*, 947 F.2d 72, 78 (3d Cir. 1991)).  And, importantly, a district court "has discretion to deny a request for a continuance if made in bad faith, for purposes of delay or to subvert judicial proceedings." *Goldberg*, 67 F.3d at 1098 (citing *United States v. Romano*, 849 F.2d 812, 819 (3d Cir. 1988)).

At the May 16 and June 17 Hearings, this Court denied Defendant's request for a continuance to retain substitute counsel and Mr. Strazza's motion to be relieved as counsel.[12] Moments later, the motion was renewed by Mr. Strazza—and granted by this Court—after Defendant allegedly threatened him with physical violence.  (June 17 Tr. at 48, 60–63.)  So, this Court was left to decide whether Defendant should proceed *pro se* or if the trial should be adjourned once again.

### Waiver By Conduct and Forfeiture

A defendant may lose his Sixth Amendment right to counsel through waiver or forfeiture. *United States v. Thomas*, 357 F.3d 357, 362 (3d Cir. 2004) (citing *United States v. Leggett*, 162 F.3d 237, 249 (3d Cir. 1998)).  Waiver and forfeiture are distinct concepts.  *Id.* at 362.  Generally, a waiver "must be knowing, voluntary and intelligent," and it is effected by an "'affirmative, verbal request' to proceed *pro se*."  *Id.* (citing *United States v. Salemo*, 61 F.3d 214, 218 (3d Cir. 1995)).  It may, however, be effected by conduct.  *Id.*  That is, "[i]f the district court has warned the defendant that he will lose his attorney if he engages in dilatory misconduct, 'any misconduct

---

[12] For a host of reasons, this Court denied the motions.  First, none of the issues cited by Mr. Strazza and Defendant— disagreements about trial strategy, threats of an unspecified complaint against counsel, and lack of communication— constituted good cause on the eve of trial.  As this Court has already noted, disagreement over trial strategy is insufficient.  *McNeil*, 561 F. App'x at 164.  So is the threat of an unspecified and seemingly meritless complaint.  *See, e.g.*, *United States v. Moore*, 159 F.3d 1154, 1158 (9th Cir. 1998) (threat of a malpractice suit does not create an actual conflict of interest); *United States v. Burns*, 990 F.2d 1426, 1437–38 (4th Cir. 1993) (a defendant's filing of a state bar grievance against his appointed counsel did not amount to a conflict).  In any event, much of the disagreement and communication challenges stemmed from Defendant's decision not to cooperate with his own counsel, and courts routinely refuse to reward defendants who intentionally thwart their own attorney-client relationship.  *Gillette*, 738 F.3d at 78 (upholding denial of a motion to withdraw where the court believed that the defendant "was seeking to 'manipulate the Court' and 'frustrate the process,' by alleging that his lawyers were incompetent"); *United States v. Marrero*, 651 F.3d 453, 466 (6th Cir. 2011) ("[A] lack of communication resulting from a defendant's refusal to cooperate with his attorney does not constitute good cause for substituting counsel." (citation omitted)).

Second, this Court and counsel for both Defendant and the Government believed that the cited issues would only repeat themselves with third appointed counsel.  Indeed, Defendant had already once before leveled similar complaints at his former counsel from the Office of the Public Defender.  *See Gillette*, 738 F.3d at 79 (upholding denial of substitute counsel where the defendant "had already substituted counsel once in the case, and both the Magistrate Judge and the District Court had reason to find that substitution would unduly delay the proceedings").

Third, this Court was concerned about Defendant's apparent gamesmanship.  Notwithstanding some of his representations on the record, Defendant had been aware for at least a year that he could retain counsel of his choice.  To be sure, this Court and Defendant's attorney reminded him that he could retain private counsel at any time, Defendant admitted to having met over a dozen private counsel in 2023 and early 2024, and in fact, Defendant stated on the record at hearings in February and May 2024 that he would be retaining private counsel.  In other words, Defendant knew that he could retain private counsel at any time, he said he would, and he never did; and his decisions to repeatedly raise issues with his appointed counsel on the eve of trial amounted to, at least, recklessness and, at most, bad faith.  This Court "has discretion to deny a request for a continuance if made in bad faith, for purposes of delay or to subvert judicial proceedings."  *Goldberg*, 67 F.3d at 1098 (citing *Romano*, 849 F.2d at 819).

thereafter may be treated as an implied request to proceed *pro se* and, thus, as a waiver of the right to counsel." *Id.*

During the June 17 Hearing, this Court held that Defendant had waived by conduct his Sixth Amendment right to counsel. That decision was set forth on the record on June 17, 2024, so this Court will only briefly recite some of the reasons underlying it. In short, this Court repeatedly cautioned Defendant against dilatory tactics and misconduct directed at his attorney; it warned him that he could be represented either by Mr. Strazza or private counsel, or proceed *pro se*; and it informed him of the risks of proceeding *pro se*. This Court later found that Defendant's conduct—before and after he received warnings—constituted an implicit waiver of his Sixth Amendment right to counsel.

This Court writes now to supplement its findings and holds, in the alternative, that Defendant forfeited his right to counsel.

"[F]orfeiture results in the loss of a right regardless of the defendant's knowledge thereof and irrespective of whether the defendant intended to relinquish the right." *Thomas*, 357 F.3d at 362 (quoting *Goldberg*, 67 F.3d at 1100)).[13] A forfeiture of a defendant's right to counsel may result after he or she has engaged in "extremely dilatory conduct" or "extremely serious misconduct." *Id.* (quoting *Goldberg*, 67 F.3d at 1101–02). Such conduct can include "a defendant's verbal abusiveness, threats to harm an attorney, and attempts to make an attorney engage in unethical activities." *Id.* at 363.

In *United States v. Thomas*, 357 F.3d 357 (3d Cir. 2004), the Third Circuit upheld a district court's finding that a defendant forfeited his right to counsel when he threatened his counsel with a "physical confrontation," verbally abused his counsel, tore up his counsel's correspondence, refused to cooperate in producing a witness list, and hung up on him during a telephone conversation.

Here, as in *Thomas*, the record supports a finding that Defendant forfeited his Sixth Amendment right to counsel: Defendant twice confronted and threatened with physical violence Mr. Strazza, refused to share discovery with him, directed him not to contact witnesses relevant to the case, verbally abused him, obstructed him during hearings, intentionally or recklessly failed to communicate with him, threatened to file complaints against him, and routinely represented that he would replace him with private counsel. Importantly, Defendant engaged in much of this same misconduct with his prior counsel from the Office of the Public Defender. That fact, along with this Court's observations of Defendant throughout the various hearings and his counsel's own admissions, make it clear that such issues would likely repeat themselves if this Court were to appoint counsel for a third time.

Accordingly, this Court holds that Defendant has waived by conduct—and, in the alternative, forfeited—his Sixth Amendment right to counsel.

---

[13] Unlike waiver by conduct, "[f]orfeiture can be found 'regardless of whether the defendant has been warned about engaging in misconduct, and regardless of whether the defendant has been advised of the risks of proceeding *pro se*." *Id.* at 362 (quoting *Goldberg*, 67 F.3d at 1101).

## CONCLUSION

For the foregoing reasons, Mr. Strazza's renewed motion to withdraw (D.E. 94) is **GRANTED**, Defendant's oral motion for a continuance to retain substitute counsel is **DENIED**. Defendant will proceed *pro se*.  An appropriate order follows.

    /s/ Susan D. Wigenton      
**SUSAN D. WIGENTON, U.S.D.J.**

Orig:   Clerk
cc:     Jason Kronick, via electronic mail